COLEMAN, APPELLANT, v. KERR, RESPONDENT.

(No. 2,189.)

(Submitted November 8, 1905. Decided November 17, 1905.)

(See, also, syllabus in *Pledge* v. *Griffith*, *ante*, p. 191.)

*Election Contests—Pleadings—Grounds of Contest—Waiver—Statutory Construction—Malconduct of Judges.*

Election Contests—Pleadings—Grounds of Contest—Waiver.
1. Section 2010, Code of Civil Procedure, enumerates, among others, "malconduct on the part of the board of judges," and the reception of "illegal votes," as grounds for which any elector of a county may contest the right of one to hold an office therein to which he has been declared elected. Contestant in his statement of contest alleged malconduct on the part of the judges, in that they received and counted for respondent votes claimed to have been illegally cast at a precinct on an Indian reservation. *Held*, that each of the causes enumerated in section 2010 constitutes a separate .cause of contest, each independent of the other, and that, while contestant may join grounds of contest embracing the several causes mentioned, if he does not do so, but elects to proceed upon one particular ground, he must be deemed to have waived any other ground enumerated.

Election Contests—Illegal Votes—Reception not Malconduct of Judges.
2. The reception of illegal votes does not constitute "malconduct on the part of the board of judges," within the meaning of section 2010, Code of Civil Procedure, since, under the provisions of the same section, a contest may also be instituted "on account of illegal votes," the legislature thus clearly indicating that it desired to draw a distinction between these two grounds of contest. (Mr. Justice Milburn dissenting.)

*Appeal from District Court, Valley County; Henry C. Smith, Judge.*

PROCEEDING by Eugene D. Coleman, as an elector of Valley county, to contest the election of John J. Kerr, as county attorney. From a judgment in favor of the contestee the contestant appeals.

*Mr. Jesse B. Roote, Mr. William G. Downing,* and *Messrs. Hurd & Dignan,* for Appellant. (See brief in *Pledge* v. *Griffith, ante,* p. 191.)

*Mr. Sam. Stephenson,* for Respondent.

Respondent contends that the ballots cannot be objected to upon the grounds that they contain identification marks under the state of the pleadings in this case. The allegations of the statement of contest in the various precincts are to the effect "that the board of judges were guilty of malconduct in that they wrongfully and unlawfully counted for contestee votes which were never cast in said precinct." This kind of an allegation is not a notice that the contestant expects to prove that certain ballots were counted for contestee which should not have been counted for him on account of the fact that they bore identification marks. Contestee had a right to be informed of the specific grounds of the contest in order that he might prepare for his defense and procure such witnesses as would be necessary for his defense. (See *Robertson* v. *Board of Commrs.* (Okla.), 79 Pac. 97; *Roberson* v. *Hubler,* 11 Okla. 297, 67 Pac. 477. See, also, brief in *Pledge* v. *Griffith, ante,* p. 191.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held in 1904, Thomas Dignan was the Democratic candidate for the office of county attorney of Valley county, and this respondent, Kerr, was the Republican nominee for the same office. The facts in this case are similar to those in the cases of *Pledge* v. *Griffith* and *Pledge* v. *Tweedie,* this day decided. The appeal is from a judgment declaring the respondent Kerr duly elected to said office.

The contentions made in this court are the same as those advanced in the cases above referred to, and the decisions in those cases determine the first of these contentions adversely to the appellant.

The district court found that the respondent, Kerr, received 574 votes, 41 of which were cast at Poplar precinct, and that his opponent, Dignan, received 556 votes, 7 of which were cast at Poplar precinct; so that, if the votes cast in that precinct be eliminated from consideration, the result of the election would be affected and the respondent would have failed of election, so far as the result would be affected by the vote of that precinct alone.

Throughout the statement of contest the allegations are that the board of election judges and the election judges were guilty of malconduct, specifying wherein such malconduct was manifested, and in their brief counsel for appellant say: "The statement of contest charges malconduct on the part of the board of judges in not counting legal votes for Thomas Dignan, and in counting illegal votes for the respondent, John J. Kerr."

Section 2010 of the Code of Civil Procedure is as follows: "Any elector of a county, town or city, or of any political subdivision of either, may contest the right of any person declared to be elected to an office to be exercised therein, for any of the following causes: 1. For malconduct on the part of the board of judges, or any member thereof. 2. When the person whose right to the office is contested was not, at the time of the election, eligible to such office. 3. When the person whose right is contested has given to any elector or inspector, judge or clerk of the election, any bribe or reward, or has offered any such bribe or reward for the purpose of procuring his election, or has committed any other offense against the elective franchise, defined in Title IV, Part I, of the Penal Code. 4. On account of illegal votes."

Under the allegations of this statement of contest we are asked to consider the question whether the votes cast at Poplar precinct were in fact legal votes. In the absence of sections 2010 to 2025, inclusive, the right of one declared to be

elected to public office, if questioned, would have to be deter-mined by *quo warranto* proceedings (section 1410, Code of Civil Procedure), and in such proceedings any ground might be urged which would render it unlawful for the person declared to be elected to hold or exercise the office. But the provisions of section 2010 above afford a special statutory remedy, provided the person complaining limits his ground of contest to the particular causes therein mentioned. Each of the four grounds enumerated constitutes a separate cause of contest. They are independent of each other, and, while a complaining party might join grounds of contest embracing the separate causes mentioned, if he does not do so, but elects to proceed upon one particular cause, he is deemed to have waived the other causes enumerated. For instance, if he elects to proceed upon the theory that the person declared elected was not at the time of the election eligible to such office (subd. 2, sec. 2010), he cannot be heard to urge in this court for the first time that he has mingled with his allegations others under which he should be permitted to show that illegal votes, for instance, were counted for the successful candidate, or that the successful candidate had been guilty of any of the criminal practices enumerated in subdivision 3.

The evident purpose of the statute is to afford to the person whose election is contested precise information of the particular cause or ground of contest. The ground selected in this instance is malconduct on the part of the election judges, as specified in subdivision 1. In attempting to enumerate the particulars of such malconduct, it is alleged that they received and counted for the contestee, Kerr, illegal votes—votes cast at a precinct within an Indian reservation, and at a polling place established at an Indian agency. But in making the reception of illegal votes a separate ground of contest, the legislature particularly excepted such cause from the definition of malconduct on the part of the judges of election, and the distinction between these grounds of contest is emphasized by section 2015 of the Code of Civil Procedure, which provides that when the reception of illegal votes is urged as cause of contest,

the contesting party cannot give any testimony relative thereto unless he delivers to the opposite party at least three days before. the trial, a written list of the number of illegal votes and by whom given, which he intends to prove on the trial, and no testimony can be received of any illegal votes except such as are specified in such list.

To say that the reception of illegal votes may be classed as malconduct on the part of the judges of election, would be to nullify subdivision 4 of section 2010 above; while an elementary rule of statutory construction requires that this court shall give meaning to every statutory provision, if possible; and in order to carry that rule into effect it is necessary for us to say that malconduct on the part of the judges of election, mentioned in subdivision 1 above, must of necessity consist of acts entirely separate from the reception of illegal votes, which is made a distinct ground of contest.

Therefore, in this instance, the contestant having elected to proceed upon the ground of malconduct on the part of the judges of election, we may not inquire whether or not facts and circumstances of an entirely different character from those selected as the basis for this ground of contest in fact existed. The question as to whether the votes cast at Poplar precinct were illegal, under section 1245 of the Political Code, is not therefore before us. The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly concurs.

Mr. Justice Milburn: I dissent. ·I am much inclined to the opinion that the votes cast at Poplar should have been thrown out at the trial of the contest. The statement of the contestant is not such as a careful lawyer should have drawn, but I think it is fairly implied therein that one of the grounds of the contest was "on account of illegal votes." (Code of Civil Proc., sec. 2010, subd. 4.)

It is true that section 2015 requires that the contestant at least three days before the trial shall deliver to the opposite party a written list of the number of illegal votes and by whom given, which he intends to prove on the trial. But I think

the statement made the point, lamely perhaps, that *all the votes* cast at Poplar on the Indian reserve were illegal, although it is stated in a mass of matter coming after the designation of malconduct of the judges as grounds of contest. Does not this make it certain as to what votes and voters were attacked? Was not the object of the requirement of notice fully attained? The poll-books and ballots made it all clear, and they were to be had at least three days before the trial. The object is to prevent surprise to the contestee as to which of the votes and voters the contestant refers.

In my opinion all of the proceedings in and about the election at Poplar—all being within the Indian reserve—were illegal and void. If the votes there cast had been thrown out, Mr. Kerr would not have had a majority, and his opponent would have been declared elected.

It is difficult, on the papers in this case, to decide, but, for the reasons given by me above, I am inclined to the belief that the opinion of the majority of the court is. erroneous and that the correct conclusion has not been reached.